ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT COURT OF PENNSYLVANIA

Charles E. Brown,    Plaintiff   :   Civil Action



FILED
OCT 22 2001
PER _____
HARRISBURG, PA.   DEPUTY CLERK

vs    :   At Docket Number: #1:00-CV-1224

Gerald Britton, et al., Defendant's :   Honorable Judge Sylvania H. Rambo

PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO F.R.Civ. P. RULE 12 (b),(6), AND MOTION TO DISMISS DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE MATTERS.

AND NOW, comes Plaintiff Charles E. Brown, pro se in the above-captioned, who respectfully Moves this Honorable Court to dismiss the Defendant's motions now pending before this Court based upon the foregoing and states in support thereof:

1. Plaintiff filed this civil action in the year 2000 pursuant to 42 U.S.C.A §1983 naming various defendant's in relation to various civil rights violations under the Eighth & Fourteenth Amendments to the U.S. Constitution of which the plaintiff was subjected to during his confinement in the Schuylkill County Prison (hereinafter, "SCP"), from 19 January 1998 until 20 August 2000.

2. During plaintiff's initial incarceration at "SCP", the Warden at that time was Defendant Kurtz. At that specific time however, plaintiff was subjected to inhumane living conditions of which plaintiff officially attempted to complain of through a "Grievance Procedure" which was in reality - NON EXISTENT, to wit; (a) while Plaintiff was confined in said facility, numerous inmates threw feces and urine at each other on each and every block while prison staff looked on with "deliberate indifferance" in respect to cleaning or having the aforementioned mes cleaned up and plaintiff had to live with this on a daily basis; (b) while the plaintiff was confined, he was subjected to having to live with water bugs, coch roaches, spiders, silver-fish and; mice within his cell and in the entire prison as a whole; (c) while plaintiff was confined, he was subjected to constent flooding within his cell from upper-tier-cells.

3. After Defendant Kurtz resigned as such on 9 April 1999, it MUST be clearly emphasized that his "Resignation" was clouded due to "Embezzlement

-1-

OF COUNTY FUNDS" (the Defense Counsel doesn't wish to broach this subject matter for obvious reason(s)), Defendant Berdanier was then "temporarily" appointed as the "Acting Warden" until the county commissioner's officially appointed Defendant Britton as permanent Warden of which shall be discussed, infra. During Defendant Beranier's temporary assignment as acting warden, the deplorable living conditions of confinement of which plaintiff was previously subjected to under Defendant Kurtz, supra., continued. Plaintiff filed numerous Grievances relating to the deplorable living conditions aforementioned. Defendant Beranier remained as acting warden from 9 April 1999, until 25 July 1999.

4. On 25 July 1999, Defendant Britton was appointed as "Warden" of "SCP". During this time and until Plaintiff was discharged from "SCP", the numerous inhumane living conditions as stated in paragraph #2 of the instant Motion, continued even though Plaintiff did file "numerous grievances".

5. All grievance's plaintiff did file on the above matters were "convenient "LOST" by prison authorities which makes a great deal of sense to do on their part since if the Defendant's argue that plaintiff never filed such grievance's on the matters complained of herein, (which is precisely what they are attempting to have this Court believe), plaintiff cannot claim he exhausted all or any of his available administrative remedies and/or, no such deplorable conditions ever existed to substantiate plaintiff's various claims and therefore, plaintiff cannot raise said U.S. Constitutional civil rights violations.

6. While all three of the above Defendants were "Wardens" at SCP at one time or another, other various inmates who were confined at "SCP" were also subjected to the same deplorable living conditions. See, Plaintiff's Exhibit's; "A"; Exhibit "B"; Exhibit "C"; and; Exhibit "D". Plaintiff submits these various Declarations to this Court BUT must advise same that due to his dire poverty, he is unable to supply Counsel for the Defense with same since he lacks funding to xerox said documents. Subsequently, plaintiff does NOT now have any copies of same for his own records. The former inmates in relation to the declarations above are now ALL incarcerated here at SCI-Albion.

7. Plaintiff did allege in the initial complaint that he did sustain an injury which was physically painful and was refused adequate medical treatment.

-2-

At the time of which the initial complaint was drawn up, Plaintiff did not specify in detail the injury or the depth of physical pain he suffered due to said injury nor "why" plaintiff had no option but to leave the examining Doctor's presence which was due to the brutal, painful and uncaring treatment plaintiff recieved by said Doctor during plaintiff's physical examination. To wit; when plaintiff was examined by this doctor (Dr. Narang), this physician deliberately squeezed on several occasions during the exam, plaintiff's knee to the point of causing MORE unnecessary physical pain and swelling afterwhich plaintiff realized that it was better to suffer from his initial pain then to allow the treating physician to aggravate the injury and causing MORE deliberately induced pain and suffering. Nevertheless, Plaintiff has the right to include ALL hardships he suffered within his "Amended Complaint" for the Federal Rules of Civil Procedure dictate that this is PERMITTED.

Presently, it wasn't until 28 days later that plaintiff's injury was adequately attended to after he complained about the unnecessary ill treatment he initially recieved by SCP's "Quack Doctor". In adition, although the medical records do not reflect deliberate indifference by the named Defendant's, one certinly WOULDN'T expect said records to reflect a "deliberate indifference standard" anyhow for obvious "legal reasons". Regardless to say, Defendant Britton, was the warden at the time of the injury and the authority figure having control on ALL prison personel including his medical staff i.e., the treating physican aforementioned, and the Defendant Berdanier who took control of SCP as acting warden from 9 April 1999 until 25 July 1999 ALSO held the same position of authority as his previous predicessor. In sum, both defendant's at one time or the other had the authority to have plaintiff's injury immediately and properly attended to by a physican other then the "quack-doctor" who is officially employed as such at SCP to inadequately treat plaintiff's injury creating more physical pain & suffering.

-3-

8. On 25 July 1999, Defendant Britton became the official warden of "SCP" to present. During his tenure, plaintiff was still being subjected to the same inhumane conditions of confinement under the previous warden/defendants named herein, to wit:

- (a) sleeping in a cell with various & numerous bugs in it;
- (b) other inmates throwing feces & urine and not having it cleaned up;
- (c) sleeping on a filithy mattress;
- (d) the prison structure was crumbling;
- (e) the dining tables were directly next to restrooms;
- (f) peeling paint in showers remained with mold & mildew;
- (g) there was one (1) broken shower stall which was NEVER repaired;
- (h) the vents were filthy due to NEVER being cleaned thus no air;
- (i) water was leaking into his cell from cells on the "upper tier";
- (j) there was cracked concrete and inadequate drainage in the exercise yard and;
- (k) the prison wall which surrounds the facility is chipping away with mortar and concrete slabs fall "freely".

9. Plaintiff filed "timely" grievances to Defendant Britton relating to the above matters, but apparently said grievances were conveniently either lost of trashed. This too makes a great deal of sense to do on the part of this latest defendant since the defendant would not be obligated to answer for, thus averring numerous U.S. Constitutional deprivations of which plaintiff was subjected to while confined at SCP under the care of Defendant Britton.

WHEREFORE, plaintiff objects to the defendants motion to dismiss plaintiff's complaint pursuant to F.R.Civ. P. Rule 12(b)(6), or, in the alternative, for summary judgment based upon the reasons as setforth above.

Respectfully Submitted,

2 October 2001
DATE

10-18-01

Charles E. Brown, #EJ-6142
10745, Route 18 SCI-Albion
Albion, Pennsylvania 16475-0002

## VERIFICATION

I, Charles E. Brown, plaintiff pro se, hereby verify that the statements made herein are true and correct. I make this statement in compliance with 28 U.S.C. §1746.

2 October 2001
DATE
10-18-01

By: *Charles Brown*
Charles E. Brown, #EJ-6142
10745, Route 18 SCI-Albion
Albion, Pa. 16475-0002

## CERTIFICATE OF SERVICE

I, Charles E. Brown, plaintiff pro se, do hereby certify that I have this 2nd day of October 2001, caused to be served a true and correct copy of the within by depositing same in the U.S. Mail, postage pre-paid, first class, and addressed to:

(a) Frank L. Tamulonis, Jr., Esquire
    111 East Market Street
    Post Office Box 238
    Pottsville, Pennsylvania  17901

By: *Charles Brown*
Charles E. Brown, #EJ-6142
10745, Route 18 SCI-Albion
Albion, Pennsylvania 16475-0002

EXHIBIT A

Acting warden: David T. Kurtz Schulkyll county pris[on]

At times between 3/95 to 10/97 i was locke[d] up in the prison awaiting my trip to state prison!

While i was at the county prison, the living conditions were unbearable! The block was always very dirty, the walls wer[e] filthy and covered with spit, boogies and human semen! The showers were covered [in] mold, semen, and also human excrement! An[d] the blocks were infested with roaches, silve[r]fish, spiders and flees and rats! The ventalation syste[m] only curculated the same stale air that was being breathed in the institution! I was once taken to the hospital in Pottsvill[e] because a spider had bitten me on the forehead and had my whole face swollen wh[ere] it was very hard for me too see and eat! It should also be noted that it took the prison staff almost a week to give me the medical attention i required! The food was ok, if you were a five year old, there wasn't nearly enough to sustain the daily nutrition[al] intake of an adult size person! If you didn't

have money to buy commissary food or if y[ou] werent able to buy a food tray from ano[ther] inmate, weight loss was imenent and bein[g] sick was a daily issue, not to mention goi[ng] to bed hangry each night! The staff, To m[y] opinion, wasnt properly trained to deal with inm[ates] they constantly verbaly abused inmates, their [were] insadences of inmates getting beaten and ther[e] were times when they incuraged other inmat[es] to "shitbomb" other inmates! A "shitbomb" is a concoction made up of human fecal matte[r], urine, and whatever else was available, semen was also a prime ingrediant! It was kept in a "vo5" shampoo bottle, the cap was almost all the way unscrewed, placed under the victim inmate's cell door, and t[hen] stomped on with all a persons force! The result was your whole cell coverd in the "vo[5]" bottles contents, and also whoever was tra[pped] in the cell at the time!

I swear that all i have written is true and acurate!

September, 22, 2001
David w Daz[ch]

I, David M. Dasch JR, hereby aver that the facts set forth in this affidavit are true and correct to Best of my knowledge, information, and belief. Any false statements made herein are subject to the penalties proscribed in 28 U.S.C 1746.

Date: 10-17-01

David M Dasch JR
SCI Albion
10745 Route 18
Albion, PA 16475-000

## AFFIDAVIT OF DANIEL SCOTT PETRICHKO
## IN SUPPORT OF PLAINTIFF'S CIVIL ACTION

COMMONWEALTH OF PENNSYLVANIA  :
                              :  SS.
COUNTY OF ERIE                :

Daniel Scott Petrichko, being duly sworn according to law depose and says that:

1. I am currently an inmate incarcerated in the State Correctional Institution at Albion. I have been an inmate here since January 21, 1998.

2. I was an inmate in the Schuylkill County Prison, located at 230 Sanderson Street, Pottsville, PA 17901. I was an inmate there from September 10, 1996 to October 20, 1997.

3. I was housed on the same cell block as Mr. Brown during my incarceration in the Schuylkill County Prison.

4. I have talked to Mr. Brown and agreed to write this affidavit to support his action against the Prison and it's staff.

5. During my incarceration there, I have witnessed first hand the many wrongs that are taking place inside the prison's walls. I will try to list them all in this affidavit.

   A. The prison has a rodent problem, especially in the name of mice. Inmates were forced to sleep on the floor due to the over crowding conditions and the mice would run right over them. There is no form of cabinets to keep commissary items in. Inmates would purchase food from the commissary and the mice would eat it due to the fact that there are no storage areas for these items.

   B. Inmates as said were forced to sleep on the floor. In the Schuylkill County Prison the cell is heated through the floor. The floor would be so hot in the winter months you could not stand on it bare footed, but yet we were forced to sleep on it.

   C. The prison also has a problem with roaches, water bugs, and spiders. As with the mice these would get into the food, in your clothes, your blankets, and everywhere else they would fit. If one of these bit you, the medical department would charge you $5.00 for the treatment.

D. On other notes. The prison made an inmate clean feces and blood off of cell walls and floors during one occasion without the use of rubber gloves, mask, or any other protective gear. With Aids, hepatitis, and tuberculosis being at an all time high among inmates, especially when those inmates had been drug users, this put that inmate in danger of his own health. When he refused to clean it they threatened him with going to the "HOLE" or the Restricted Housing Unit.

E. The correctional officers would abuse inmates verbally and physically. I doubt that this is documented anywhere, but I have seen it personally happen in the hole. The time when four officers rushed an inmate and beat him until his arm was broken, he had two loose teeth, and his face was all black and blue. This was done because the inmate was a state prisoner being housed in the county prison and would complain about the conditions.

F. During visits officers would make rude and inappropriate comments to family members, wives, or girlfriends that would come to see the inmate. They would say things like "Why you bother with him, he is never getting out" "You are a nice looking woman, what are you doing with this loser". On one occasion an officer propositioned my fiance and asked her to meet him at a fair that was being held in Pottsville. He was reported and resigned to a different position.

G. Family and friends would drop off money during visits and the money would be missing until the inmate started to complain.

H. The prison employed a doctor and dentist who were incompetent in their treating of the inmates. In my case the dentist drilled the wrong tooth and never followed up on a temporary filling which caused me infection and eventually the lose of the tooth. Another inmate had the dentist pull the wrong tooth. When confronted with this the dentist pushed the blame onto the nurse and incomplete charts. The doctor now deceased, in my case, misdiagnosed a torn rotatory cup in my shoulder. This was after I was denied to see him for two weeks by the staff. To this date I have a continuing dislocating shoulder. This happens on its on without any pressure or movement being applied.

6. I have tried to list some of the instances that I have witnessed. To list them all would waist this court's valuable time. They are so many and I would not have enough time to go into detail.

7. I am unable to have this notarized. I would ask this court to accept this with the unsworn declaration in place of the notary seal.

### UNSWORN DECLARATION

I, Daniel Scott Petrichko, hereby aver that the facts set forth in this affidavit are true and correct to the best of my knowledge, information, and belief. Any false statements made herein are subject to the penalties proscribed in 28 U.S.C.§1746.

*Daniel Scott Petrichko*
Daniel Scott Petrichko
DK-8326 SCI Albion
10745 Route 18
Albion, PA 16475-0002

Date: September 19, 2001

EXHIBIT C

warden's at the time of my incarceration at Sch. County Prison: David Kurtz, inacting warden Eugene Beraad and Current Warden.Gerald Britton.

10·7·97 through 10·18·00

Upon enter Schuylkill County Prison while I was there you were stripped of your underwear and socks if they were any color other than solid white or grey. You were given no shower or ~~affording~~ affored hygiene products to brush your teeth for 72 hrs. You were given no shower slippers to take a shower in the community shower, in which, people urinate defecate and masturbate in. You are given two uniforms and because of the laundry schedule, once a week, you had to wear the same uniform for a full week; many times, for many inmates, without underwear. That is unless you were fortunate to ~~buy~~ more underwear and sweatclothes. If you had no money you went without under wear and hygiene products for thirty days. After that time you were given hygiene products only.

Most people were put on B or C block after their seventy-two hour intake

lockdown. These blocks are designated as single cells ~~all~~ with one bunk per cell. If placed on these blocks you were guaranteed to be celled up with another inmate. One of you were placed on the floor within twelve inches of the toilet. Among housing inmates, the prison housed an assortment of bugs, including but not limited to cockroaches, beattles, ants, etc. The bunks themselves were in most cases bowed, causing a person to sleep in a curved position.

The food there may have met nutritional values if they were serving the correct amount but, they weren't. I know this from working in the kitchen myself. If a serving called for four ounces, we were told to serve three. If it was six then we were told to serve four. Some of the food was old or sat out for hours allowing bugs to come in contact with it and still we served it.

The inmates have tried to fix some of these problems through request (prison

grievance procedures) but, eight out of ten request were thrown away before reaching the intended destination. 80% of the two out of ten that reached their destination went unanswered. It took me a total of sixteen months of request sent every other weeks to be put on my medication. Once I was called to the Counselor, Mike Kryjak, he appologized by saying "Sorry I didn't call you up in the begining, I thought you were a nigger because of your first name." It being Kurtiss, a popular name among african-american ~~that~~ males. Even in medical circumstances, things don't fair well because both the dentist and physician are old men who aren't interested in wether we have a legitimate complaint or not, only money. They believe all inmates are drug addicts looking for some sort of drugs. That is in my opinion.

During fire and safety or Health inspections, the gaurds come around to where inmates are doubled up in the single cells and take off the extra name tags that indicate there is two in the cell. We are told to put the other, one inch thick, matress under the bunk and to stay away from view through the window in the door. Any disobeying this order was put on administrative lock up. Since the prison was forwarned to these inspections, the gaurds volunteered inmates to clean the blocks completely and if you refused you were put on administrative Custody.

I Kurtiss B. McKee swear that every thing in this document is true to the fact.

Kurtiss B. McKee
EK8695 SCI Albion
10745 Rt 18
Albion, PA 16475-0002

x Kurtiss B McKee  8·30·

COMMONWEALTH OF PENNSYLVANIA :
: ss:
COUNTY OF ERIE :

On this, the 30th day of August, 2001, before me, a Notary Public, the undersigned officer, personally appeared Kurtiss B. McKee, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purpose therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Jo Anne R. Bickel

My Commission expires on the 23rd day of September, 2002

Notarial Seal
Jo Anne R. Bickel, Notary Public
Albion Boro, Erie County
My Commission Expires Sept. 23, 2002

EXHIBIT D

10.4.01

During my time in Schuylkill County Prison there was three riots that I can remember. In acting warden, Deputy Warden, Gene Bernadier was the present warden for one of the riots. Ward Gary Britton was the present for the last two riots.

The riots happened because of conditions at the prison, Lack of a proper Law library, an apathetic Medical Department, and the general treatment of the inmates. The channels (request slips) to achieve remedies were mishandled by the guards and administrative staff. The inmates felt the only way to correct the problems at the prison was to elevate the situation to such a degree that the administration was forced to do something to correct the situation or to draw unwanted attention from the outside

Notarial Seal
Jo Anne R. Bickel, Notary Public
Albion Boro, Erie County
My Commission Expires Sept. 23, 2002

Subscribed + Sworn Before Me This 4th Day of Oct., 2001.

Jo Anne R. Bickel
Notary Public

Kurtiss B McKee
Kurtiss McKee